**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANDREY KRUCHENKO, | CASE NO. CV 17-3819 SS |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.**

**INTRODUCTION**

Andrey Kruchenko ("Plaintiff") brings this action seeking to overturn the decision of the Acting Commissioner of Social Security (the "Commissioner" or "Agency") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. (Dkt. Nos. 7, 12-13). For the reasons stated below, the Court AFFIRMS the Commissioner's decision.

Plaintiff filed his DIB and SSI applications on October 10, 2013, alleging a disability onset date of September 30, 2012. (AR 216-26). The Commissioner denied Plaintiff's applications initially on March 29, 2014, (AR 143-153), and denied them upon reconsideration on June 9, 2014. (AR 156-66). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on February 4, 2016. (AR 44-77). The ALJ issued an adverse decision on February 24, 2016, finding that Plaintiff was not disabled because there are jobs that exist in significant numbers in the national economy that he can perform. (AR 22-34). On April 27, 2017, the Appeals Council denied Plaintiff's request for review. (AR 1-3). This action followed on May 22, 2017.

III.

**FACTUAL BACKGROUND**

A.   <u>Plaintiff's Statements and Testimony</u>

Plaintiff was born on May 14, 1974, and was thirty-nine (39) years old when he filed his applications. (AR 216, 218). He completed high school and two years of technical college and was licensed to work as a medical assistant and x-ray technician. (AR 50, 244). He worked as a security guard, (AR 51), and as a medical assistant at a blood and plasma donation center. (AR 50, 245). His last job was in telemarketing in 2012, and it lasted about two

weeks. (AR 50, 245). He initially claimed he could not work due to various back problems, along with low blood pressure and numbness in his toes. (AR 243). At the hearing, he testified that he could not work due to his depression and back pain. (AR 55-56).

Plaintiff underwent lumbar fusion surgery in September 2015. (AR 53). Before the procedure, he was homeless and living in a shelter. (AR 54). Since then, he has lived with his brother. (AR 48). Plaintiff eats frozen meals and he does not do laundry. (AR 53). His brother does most of the household chores. (AR 53). Plaintiff testified that he stays home "[m]ost of the time," going out only to see his doctor or go to the pharmacy. (AR 53). He rides the bus for transportation. (AR 48). He does not have friends. (AR 67).

Plaintiff stated that the medications do not take all the pain away and most days his pain is a seven on a scale of ten. (AR 65). He occasionally experiences "bad days" when his back pain becomes so intense that he stays home, takes his pain medications, and avoids people. (AR 65-66). Plaintiff testified that his back pain limits his ability to sit, stand and walk for prolonged periods. (AR 55-56). He can sit for less than twenty minutes, after which he needs to get up and move around for twenty minutes to relieve his back pain. (AR 56). He avoids lifting anything due to his back pain, though he supposes he could lift about ten pounds "[i]f it's really needed." (AR 57).

Plaintiff stated that he experiences depression most of the time. (AR 57). His depression affects his memory and concentration. (AR 67). He needs reminders to complete tasks. (AR 66-67). He also has a history of alcohol abuse that began several years earlier, after the death of his wife in 2009. (AR 61, 64, 494). He testified at the hearing that he had been sober for two years. (AR 61).

Before he started getting regular mental health treatment in November 2014, Plaintiff "was off and on the medication." (AR 57). He stated that he had previously been seeing a psychiatrist around 2009, who was prescribing medication, and he "was taking that for a while," but he stopped, as he "felt [he] was capable of handl[ing] it on [his] own." (AR 60). He is now taking medication for depression, and he stated that it "helps out. It really does." (AR 59). He stated that his current medication has "eliminate[d]" his depression. (AR 59). He also sees a therapist once a week. (AR 65).

He testified that he cannot drive due to his medications, which include Seroquel, Vicodin and Neurontin. (AR 49). He also noted he "ha[s] a reaction on the cyclobenzaprine, muscle relaxer." (AR 49). He said the medications make him drowsy and dizzy. (AR 49, 57). He did not experience the side effects initially, when he was prescribed only a low dosage of Seroquel, but the side effects occurred when the dosage increased. (AR 58).

**B.   Treatment History**

### 1.   Back Pain

On January 3, 2010, Plaintiff sought treatment for back pain at Kaiser Permanente. (AR 1176-97). He complained that the pain made him unable to walk and he had been bedridden for a month. (AR 1176). Doctors prescribed painkillers, and the pain was resolved by the following day. (AR 1179). Plaintiff returned on March 21, 2010, complaining of "lower back pain with occasional radiation down [his] left leg." (AR 1204; see AR 1204-50). On examination, doctors observed tenderness in his lower back and positive straight leg raise tests. (AR 1205, 1212). The next day, an MRI study showed evidence of a five-millimeter disc protrusion at L4-L5, which "displace[d] the left nerve roots posteriorly." (AR 1219-20). Plaintiff received an epidural injection to treat the pain that day. (AR 1251-53).

At Kaiser again on April 9, 2010, Plaintiff complained of persistent back pain, with sharp pain radiating down his left leg. (AR 1328). He stated that it worsened with prolonged sitting and lying down. (Id.). On examination, Plaintiff exhibited an abnormal gait, positive straight leg raise tests, pain with range of motion testing at the lumbar spinal area, and reduced motor strength at the left lower extremity. (AR 1329-30). On April 21, 2010, Plaintiff underwent a "[l]eft L4-5 minimally invasive hemilaminotomy, medial facetectomy, foraminotomy and microdiscectomy." (AR 1521). Plaintiff was "very satisfied with

the surgical outcome." (Id.). After the procedure, on May 4, 2010, Plaintiff reported that his severe leg and back pain, as well as his left leg weakness and numbness, were "completely resolved." (Id.). He was not taking any medications. (AR 1522).

Plaintiff visited Kaiser complaining of back pain again on October 5, 2012. (AR 1545-46). The pain had been "severe and constant for [the] last couple of days." (AR 1545). The doctor noted that Plaintiff "does use [a] bicycle and thinks this may have caused his pain." (Id.). On examination, Plaintiff exhibited normal range of motion, but slow movements due to pain. (AR 1546). The doctor prescribed pain medications. (AR 1547-48).

Between 2012 and 2014, Plaintiff received treatment for back pain, primarily involving pain medications, at Mission City Community Network. (AR 599-603, 927-51). On January 17, 2013, Plaintiff visited the emergency room at Glendale Memorial Hospital and Health Center complaining of back pain that he had been experiencing for about two months. (AR 553-58). He also reported numbness and tingling at the lower extremities. (AR 553). He exhibited vertebral tenderness, muscle spasm, reduced range of motion at the lumbar spinal area and positive straight leg raise tests. (AR 555). An imaging study that day showed degenerate disc disease in L4-L5 with disc space narrowing. (AR 569). A CT study on January 19, 2013 revealed evidence of a large posterior central disc herniation at L4-L5, with severe spinal canal stenosis. (AR 526). On August 29, 2013, Plaintiff visited Kaiser complaining of shooting pain in his back that radiated to the left lower extremity,

causing paresthesias.  (AR 1565-66).  On examination, he exhibited normal strength and range of motion.  (AR 1567-68).

On March 10, 2014, J. Zheutlin, M.D., a state agency medical consultant, reviewed Plaintiff's records and opined that Plaintiff could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk up to six hours in an eight-hour workday; and sit up to six hours in an eight-hour workday. (AR 106).  He further limited Plaintiff to no climbing ladders, ropes, or scaffolds; no more than frequent climbing ramps or stairs; no more than frequent balancing, stooping, kneeling, crouching, or crawling; no exposure to hazards; and less than moderate exposure to vibrations.  (AR 106-07).  Agency medical consultant K. Rudito, M.D., found the same limitations upon reviewing the records on June 9, 2014.  (AR 138-39).

Oganes Paronian, M.D. treated Plaintiff's back pain between December 2014 and July 2015.  (AR 1616-53).  Examinations showed stiff, reduced range of motion in the lower back, and he prescribed pain medications.  (See id.).

On April 15, 2015, Jan Duncan, M.D., an orthopedic surgeon, evaluated Plaintiff.  (AR 1600-01).  Dr. Duncan observed reduced range of motion in Plaintiff's back, a positive left straight leg raise test, and reduced sensation and motor strength in the left foot.  (AR 1600).  Dr. Duncan ordered an MRI of the lumbar spine. (AR 1601).  The MRI, done on May 15, 2015, revealed evidence of severe disc degeneration and a left paracentral disc extrusion at

L4-L5.   (AR 1602-03).   The disc extrusion displaced the transversing left L5 nerve root and contributed to mild canal stenosis.  (AR 1603).  Upon reviewing the MRI results, on June 25, 2015, Dr. Duncan recommended surgery.  (AR 1598).

On August 24, 2015, Plaintiff underwent an L4-L5 fusion.  (AR 1591-92, 1596-98).  After the procedure, Dr. Paronian continued to treat him for back pain.  (AR 1608-15).  He found Plaintiff had stiff, reduced range of motion in the lower back, and he prescribed pain medications.  (Id.).  On September 9, 2015, Dr. Duncan observed that Plaintiff's incision was "healing well," and Plaintiff was "to increase activity as tolerated."  (AR 1596).  On October 23, 2015, Dr. Paronian noted that Plaintiff's left leg pain was "gradually subsiding."  (AR 1608).

Dr. Paronian completed a Physical Residual Functional Capacity Questionnaire on September 21, 2015.  (AR 1604-07).  He stated that he had been treating Plaintiff for seven years, and he diagnosed Plaintiff with "[p]ersistent low back pain with left sciatic pain due to degenerative disc disease status post left laminectomy and fusion surgery."  (AR 1604).  He stated that Plaintiff suffered from "persistent left lower extremity pain, back pain, left foot numbness, [and] left leg weakness."  (Id.).  These symptoms presented in "painful movements of lower back," "limited motion," pain upon lifting the left leg forty-five degrees, and "sensory loss on medial left foot."  (Id.).  Treatment involved two spinal surgeries in five years, as well as daily pain medications and muscle relaxants.  (Id.).

Dr. Paronian opined that Plaintiff could lift and/or carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk up to two hours in an eight-hour workday, with the use of a cane; and sit less than six hours in an eight-hour workday. (AR 1605). He noted that Plaintiff needs to change positions every thirty to forty-five minutes. (Id.). Dr. Paronian further found that Plaintiff is capable of limited pushing and/or pulling with the lower extremities; no more than occasional balancing or kneeling; and no bending, climbing, crouching or crawling. (AR 1606).

### 2. Depression

Plaintiff was hospitalized for suicidal ideation, along with alcohol abuse, on several occasions in 2012. On March 12, 2012, for example, Plaintiff was checked into Olive View Medical Center for severe alcohol withdrawal, and then placed on administrative hold for several days due to suicidal ideation. (AR 831-45). Plaintiff reported that he had been significantly depressed and drinking heavily since his wife died in 2009. (AR 831). It was noted that he had two prior psychiatric hospitalizations in 2009 and 2011 for major depression and suicide attempts. (Id.). He complained of "anhedonia, hopelessness, feelings of guilt, low energy, distractability, and insomnia from ruminative thoughts regarding his many problems." (AR 837).

Other hospitalizations for suicidal ideation and alcohol abuse occurred in April, June and November of 2012. (See AR 441-42, 989-

95, 399-400, 983-88, 352-53, 455-59, 492-95).  In each incident, he was placed on administrative hold after drinking heavily and threatening or contemplating suicide.  (See id.).  Each time, doctors treated him, prescribing drugs such as Prozac and Xanax, and discharged him in stable condition about three days later. (See id.).

On March 28, 2014, K. Gregg, M.D., a state agency medical consultant, reviewed the medical record and opined that Plaintiff's mental impairments were non-severe. (AR 103).  Dr. Gregg further found that the impairments caused no restriction in activities of daily living; no restriction in social functioning; no restriction in concentration, persistence or pace; and no episodes of decompensation. (AR 104).  On June 9, 2014, agency consultant R.E. Brooks, M.D. reviewed the records and agreed with Dr. Gregg's assessment. (AR 135-36).

On January 29, 2015, Plaintiff underwent an initial mental health evaluation at San Fernando Valley Community Mental Health Center ("SFVCMHC"). (AR 1675-79).  He complained of anxious and depressive symptoms, such as anhedonia, low ambition, loss of appetite, social isolation, suicidal ideations, excessive worry, and feelings of helplessness and hopelessness. (AR 1675).  He stated that his symptoms impaired his judgment and decision-making. (Id.).  He also reported his history of alcohol abuse. (Id.).  On examination, Plaintiff exhibited tearfulness, a blunted and sad affect, and impaired insight and judgment. (AR 1678).  The

evaluator noted that Plaintiff's mood was dysphoric, tearful, lacking pleasure, anxious, and "[h]opeless/[w]orthless." (Id.).

Between March and November 2015, Plaintiff received mental health treatment at SFVCMHC from Lilit Pogosian, M.D. (AR 1664-74). He reported that he had been homeless for two or three years, (AR 1673), and he had been sober since July 2014. (AR 1674). Generally, Dr. Pogosian noted that Plaintiff's mood was improving, and he appeared mildly anxious, but stable overall, with no suicidal ideation. (See AR 1664-74). His insight and judgment were limited. (See id.) Plaintiff reported a variety of stressors, including the loss of custody of his son, his physical pain, and his problems with finding housing, which contributed to his symptoms. (See id.). Dr. Pogosian prescribed medications such as Wellbutrin and Seroquel, and Plaintiff denied any side effects. (See id.).

Dr. Pogosian completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) on September 8, 2015. (AR 1593-95). She opined that Plaintiff's mental impairments caused "marked" impairment in his ability to perform a variety of mental work-related activities, such as understanding, remembering, and carrying out detailed instructions; interacting appropriately with coworkers, supervisors, and the public; and responding appropriately to work pressures in a usual work setting. (AR 1593-94). She opined that Plaintiff's impairments caused "moderate" limitation in his ability to perform other work-related activities, such as understanding, remembering, and carrying out short, simple

instructions; making judgements on simple work-related decisions; and responding appropriately to changes in routine work setting. (Id.).

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents the claimant from engaging in substantial gainful activity and that is expected to result in death or to last for a continuous period of at least twelve months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing work previously performed or any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled.  If not, proceed to step five.

(5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54.  Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  Id. at 954.  If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work

experience. <u>Tackett</u>, 180 F.3d at 1098, 1100; <u>Reddick</u>, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1). The Commissioner may do so by the testimony of a VE or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the grids"). <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and non-exertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert ("VE"). <u>Moore v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1340 (9th Cir. 1988)).

**V.**

**THE ALJ'S DECISION**

The ALJ employed the five-step sequential evaluation process and concluded that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 24-34). At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 30, 2012, the alleged onset date. (AR 24). At step two, the ALJ found that Plaintiff "has the following severe impairments: depression; degenerative disc disease of the lumbar spinal area status post discectomy and fusion; and history of alcohol abuse." (<u>Id.</u>). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (<u>Id.</u>).

The ALJ found Plaintiff has the following RFC:

> [Plaintiff can] lift and/or carry twenty pounds
> occasionally and ten pounds frequently and sit, stand,
> and/or walk up to six hours in an eight-hour workday,
> with no climbing ladders, ropes, or scaffolds; no more
> than frequent climbing ramps or stairs; no more than
> frequent balancing, stooping, kneeling, crouching, or
> crawling; and no exposure to unprotected heights, moving
> mechanical parts, or vibrations. [Plaintiff] is able to
> perform work that requires no more than simple, routine,
> repetitive tasks; no more than simple work-related
> decisions; no production rate work (i.e., no assembly
> line work); no more than occasional and incidental
> contact with coworkers and supervisors; and no public
> contact.

(AR 25). At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. (AR 31). Based on Plaintiff's RFC, age, education, work experience and the VE's testimony, the ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including routing clerk, dry cleaner and mail clerk. (AR 33). Accordingly, the ALJ found that Plaintiff is not under a disability as defined by the Social Security Act, since September 30, 2012, the alleged onset date. (Id.).

# VI.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. "[The] court may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." (Id.). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

**VII.**

**DISCUSSION**

Plaintiff contends that the ALJ erred in four respects: (1) rejecting Plaintiff's testimony regarding his subjective symptoms and physical limitations relating to his lumbar spine impairment; (2) rejecting Plaintiff's testimony regarding his subjective symptoms and mental limitations relating to his depression impairment; (3) rejecting the opinions of Plaintiff's treating sources regarding his physical and mental limitations; and (4) relying on the VE's response to the ALJ's incomplete hypothetical question. (Dkt. No. 19 at 2, 6-23). The first two issues, which concern the ALJ's assessment of Plaintiff's credibility, are addressed together below, followed by the remaining two issues.

**A.** **The ALJ's Reasons For Discrediting Plaintiff's Subjective Symptom Testimony Were Specific, Clear And Convincing**

Plaintiff asserts that the ALJ's reasons for rejecting the credibility of his allegations regarding back pain and depression were general, conclusory and contrary to substantial evidence in the record. (See Dkt. No. 19 at 6-16).

**1.** **Standards**

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis. Trevizo v. Berryhill, 874 F.3d 664, 678 (9th Cir. 2017).

First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014). "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." Id. (emphasis in original) (citation omitted). "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. Trevizo, 874 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." Garrison, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to

conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role to second-guess it." Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

## 2. Factors Supporting The ALJ's Adverse Credibility Determination Regarding Lumbar Spine Impairment

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 26). He found, however, that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the reasons explained in th[e] decision." (Id.). The ALJ provided specific, clear and convincing reasons to find Plaintiff's complaints of debilitating lumbar spine pain not entirely credible. (AR 28-30). These reasons are sufficient to support the Commissioner's decision.

a.   Conflicts With Objective Medical Evidence

The ALJ found Plaintiff not entirely credible partly because his reported symptoms were not corroborated by the medical evidence of record.  (AR 28-29).  Plaintiff contends that this reason was "general and conclusory, and contrary to the substantial medical evidence in the record."  (Dkt. No. 19 at 10).  However, the ALJ identified multiple medical records with sufficient specificity that contradicted Plaintiff's allegations of debilitating pain. The ALJ considered imaging studies from January 2013 and May 2015. (AR 28-29).  The ALJ observed that the imaging studies showed a herniated disc and some degenerative changes, but it remained unclear whether these changes caused "neural encroachment."  (AR 28; see AR 526-27, 1602-03).  Specifically, while records from January 2013 showed evidence of "severe" spinal canal stenosis, records from May 2015 indicated only "mild" spinal canal stenosis. (AR 28; see AR 526-27, 1602-03).  These imaging results in January 2013 and May 2015 also did not show any additional significant bone abnormalities.  (AR 28; see AR 526-27, 1602-03).  The ALJ further noted that the record lacked any neurodiagnostic studies of the lower extremities to support Plaintiff's complaints of radicular symptoms.  (AR 28-29).

Plaintiff contends that by considering Plaintiff's imaging studies, the ALJ was impermissibly "[a]cting as his own medical expert."  (Dkt. No. 19 at 10).  However, the ALJ made reasonable inferences based on what is readily apparent in the imaging reports.  (See AR 526-27, 1602-03).  This includes the fact that

the May 2015 report noted only mild canal stenosis, (AR 1602-03), which reasonably suggests that Plaintiff may not have had the kind of "neural encroachment" that one would expect given the severity of his complaints.

Moreover, the ALJ found that the clinical findings in the record were inconsistent with Plaintiff's back-related complaints. (AR 29). While the ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations," Bray, 554 F.3d at 1227, the ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record," SSR 16-3p, at *5 (emphasis added). Here, the ALJ did not reject Plaintiff's subjective symptoms solely because of a lack of evidence to support Plaintiff's allegations. Instead, the ALJ discredited Plaintiff's statements also because they are inconsistent with the medical signs and laboratory findings in the record. "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008); see SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").

Plaintiff contends that the ALJ impermissibly cherry-picked evidence from the record to support his finding of inconsistency. (Dkt. No. 19 at 10-11). However, the ALJ cited ample record evidence that is inconsistent with the severity of Plaintiff's lumbar spine impairment. For example, the ALJ correctly noted that Plaintiff's treating physicians between 2012 and 2014 did not observe any "significant functional limitations of the spine or joints or sensory or motor deficit(s) at the extremities." (AR 29; see AR 599-03, 928-951). Among the records from this period, a treatment note from January 15, 2014 indicates that Plaintiff had no deformities, no gross sensory or motor deficits, and full range of motion. (AR 935). The ALJ also pointed to a treatment record from August 2013 in which a physician at Kaiser Permanente observed normal range of motion at the spine and joints and normal motor strength and sensation at the extremities. (AR 29; see AR 1567-68). The ALJ noted, moreover, that while treating physician Dr. Paronian "consistently observed functional limitations of the spine," the doctor "did not observe any additional significant musculoskeletal or neurological abnormalities." (AR 29; see AR 1610, 1618, 1630, 1643, 1651). The ALJ reasonably concluded that such clinical findings were inconsistent with Plaintiff's complaints of debilitating back pain.

b.   Conservative Treatment

The ALJ also found that Plaintiff's course of treatment did not support his allegations. (AR 29). The Ninth Circuit has concluded that "evidence of conservative treatment is sufficient

23

to discount a claimant's testimony regarding severity of an impairment." Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) (citation omitted); see Tommasetti, 553 F.3d at 1039-40 (ALJ may properly infer that claimant's pain "was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program" and "responded favorably to conservative treatment"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999), as amended (June 22, 1999) ("Meanel's claim that she experienced pain approaching the highest level imaginable was inconsistent with the 'minimal, conservative treatment' that she received.").

Plaintiff disputes the ALJ's finding, contending instead that he underwent "aggressive treatment with narcotic pain medications, epidural injections, and spinal surgeries." (Dkt. No. 19 at 12). However, as the ALJ points out, Plaintiff's back condition was completely resolved for more than two years after his microdiscectomy in April 2010. (AR 29; see AR 1044-45 (April 21, 2010); AR 1491 (April 22, 2010 (phone call)); AR 1516 (May 4, 2010)). When the pain returned in October 2012,[1] Plaintiff believed it was due to his bicycle riding. (AR 1545-46 (October 5, 2012)). From then on, until August 2015, Plaintiff's treating physicians managed his back pain by prescribing various medications, such as Cyclobenzaprine, Flexeril, Gabapentin, Hydrocodone, Ibuprofen, Norco, and Tramadol. (AR 29; see AR 599-03, 928-951, 1547-48,

---

[1]  Plaintiff's alleged disability onset date is September 30, 2012.  (AR 216, 218).  On October 5, 2012, Plaintiff complained of back pain that had been "severe and constant for [the] last couple of days."  (AR 1545-46).

1610-53).  He did not undergo more serious treatment until his
lumbar fusion in August 2015, and there is no indication that such
treatment was recommended until that time.  After Plaintiff's
August 2015 lumbar fusion, he appeared to be healing well and his
radicular symptoms showed improvement.  (AR 29; see AR 1596
(September 9, 2015), 1608 (October 23, 2015)).

Based on this record, the ALJ reasonable determined that
Plaintiff's course of treatment conflicted with his allegations of
debilitating back pain.  See Warre v. Comm'r of Soc. Sec. Admin.,
439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be
controlled effectively with medication are not disabling for the
purpose of determining eligibility for SSI benefits."); Crane v.
Shalala, 76 F.3d 251, 254 (9th Cir. 1996) (ALJ properly considered
evidence suggesting that claimant responded well to treatment in
rejecting claimant's testimony).

c.   Third-Party Statement

Plaintiff additionally contends that "in the credibility
evaluation, the ALJ improperly rejected the February, 2014, third-
party statement of Plaintiff's brother, Dimitriy Kruchenko."[2]

[2]   Defendant contends that Plaintiff's argument on this point is
moot because Dimitriy appears to have written the letter on
Plaintiff's behalf, from Plaintiff's own first-person perspective.
(Dkt. No. 20 at 13 n.7).  Thus, in Defendant's view, the letter
was not a proper third-party statement in which Plaintiff's brother
"shares his own observations regarding Plaintiff's condition, as
both the ALJ and Plaintiff's counsel assumed."  (Id.).  While it
is true that Dimitriy seems to have written the report from
Plaintiff's first-person perspective, the document is labeled as a

(Dkt. No. 19 at 12-13). "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." Stout v. Comm'r, 454 F.3d 1050, 1053 (9th Cir. 2006). To discount lay witness testimony, the ALJ "must give reasons that are germane to each witness." Id. (citations omitted).

The ALJ discussed the statements of Plaintiff's brother, Dimitriy, as follows:

> In a Third Party Function Report, dated February 27, 2014, Mr. [Dimitriy] Kruchenko indicated [Plaintiff] could not bend, lift, or sit, stand, and/or stand for prolonged periods due to his back pain. He changed positions three or four times at night due to his pain. His pain limited his ability to perform a variety of daily activities, such as bathing and shopping. Although Mr. Kruchenko is not an acceptable medical source, his report must be considered per Social Security Ruling 06-03p to show the severity of [Plaintiff's] impairments and how they affect [his] ability to function. I find Mr. Kruchenko's statements are deserving of little probative weight because they reflect lay opinion based upon casual observation, rather than objective medical evidence and testing.

third-party function report. (See AR 269-77). The Court considers it as a third-party statement because the ALJ reasonably treated it as such.

Further, Mr. Kruchenko's statements might have been
influenced by loyalties of family. Overall, they do not
outweigh the accumulated medical evidence regarding the
extent to which [Plaintiff's] impairments limit [his]
functional abilities.

(AR 31 (citations omitted).

Plaintiff contends that the ALJ "fail[ed] to provide any reasons germane to this lay witness." (Dkt. No. 19 at 13). However, any such failure is harmless here because Dimitriy's statements are largely similar to Plaintiff's own subjective statements, which the ALJ properly discredited for the reasons discussed above. (Compare AR 269-77 (third-party report), with AR 278-86 (Plaintiff's function report)); see Molina v. Astrue, 674 F.3d 1104, 1114-20 (9th Cir. 2012) ("Where lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," ALJ's failure to discuss the lay witness testimony is harmless); Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (if ALJ gave germane reasons for rejecting claimant's testimony, those reasons are equally germane to similar testimony by a lay witness).

In sum, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse

credibility findings relating to Plaintiff's lumbar spine impairment.

### 3. Factors Supporting The ALJ's Adverse Credibility Determination Relating To The Depression Impairment

Plaintiff contends that the ALJ failed to provide specific, clear and convincing reasons for rejecting his testimony regarding his depression impairment. (See Dkt. No. 19 at 14-16). The ALJ gave several reasons for finding Plaintiff's allegations of a depression impairment to be not entirely credible. For one, the ALJ found that the clinical findings were largely unremarkable. (AR 21). Plaintiff contends that this reason is "general and conclusory, and contrary to the substantial medical evidence in the record." (Dkt. No. 19 at 15). Plaintiff contends that the ALJ "improperly 'cherry-picked' the evidence to support his conclusion that Plaintiff's allegations were not credible, and did not account for the record as a whole." (Id. at 16 (citations omitted)).

Contrary to Plaintiff's contention, the ALJ provided sufficient specific findings based on a reasonable consideration of the record evidence as a whole. The ALJ noted, for example, that in January 2015, a social worker observed normal eye contact, calm motor activity, normal speech, full orientation, unimpaired memory and intellectual functioning, average fund of knowledge, intact concentration and abstract reasoning. (AR 29; see 1678 (Jan 29, 2015)). The social worker saw no evidence of thought process

or perceptual disturbances. (Id.). The ALJ also noted that between March and September 2015, Plaintiff's treating psychiatrist observed good grooming, a cooperative attitude, good eye contact, stable and intact affect, normal speech, and thought processes that were linear, logical and goal-directed. (AR 29; see AR 1666 (September 15, 2015); AR 1674 (March 3, 2015)).

The ALJ also considered Plaintiff's treatment for depression, including the fact that Plaintiff apparently did not receive regular treatment with a mental health specialist until January 2015. (AR 29-30; see AR 1675 (January 2015 social worker assessment stating that Plaintiff "reports that treatment, especially medication helps with his depressive [symptoms] but has never received outpatient treatment . . ."). Plaintiff contends that this reason fails to undermine his credibility because "he had numerous psychiatric hospitalizations between 2012 and 2014," before he began regular treatment in January 2015. (Dkt. No. 19 at 16). Records from these psychiatric hospitalizations show, however, that drugs such as Xanax and Prozac helped Plaintiff, but he failed to take them consistently after being discharged. For example, on November 16, 2012, after three days of administrative hold due to suicidal ideation, Plaintiff was discharged in stable condition from BHC Alhambra Hospital and prescribed Prozac. (AR 455-59). Ten days later, on November 26, 2012, he was checked into Gateways Hospital and Mental Health Center after attempting suicide, and was placed on administrative hold for three days. (AR 492-95). Plaintiff reported that he had stopped taking the Prozac. (AR 493; see also AR 345 (November 11, 2012 treatment note stating

Plaintiff was "non compliant with his meds")). He was restarted on Prozac and other drugs and "began to improve quite quickly." (AR 494-95). Plaintiff's failure to comply with prescribed treatment, and to seek regular mental health treatment during this period reasonably undermines his credibility. See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012) (ALJ did not err "to the extent the ALJ implicitly considered [claimant's] failure to follow [a physician's assistant's] advice that she seek counseling" because an ALJ assessing credibility "may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" (internal quotations and citations omitted)).

As the ALJ noted, once Plaintiff began regular treatment, his treating psychologist prescribed medications such as Seroquel and Wellbutrin, and these appeared to stabilize Plaintiff's symptoms and improve his problems with anxiety and sleep. (AR 30; see AR 1664-74). The ALJ also observed that Plaintiff did not complain to his treating psychiatrist of medication side-effects, in contrast to his hearing testimony. (See id.). Accordingly, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, for his adverse credibility findings relating to Plaintiff's depression.

**B.    The ALJ Provided Specific And Legitimate Reasons For Rejecting The Treating Medical Opinions**

### 1.    Standards

The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record."    20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).    "When a treating doctor's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, and consistency with the record." Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)–(6)); see also 20 C.F.R. § 416.927(c)(2)-(6). Greater weight is also given to the "opinion of a specialist about medical issues related to his or her area of specialty."    20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).    "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."    Id.; see also

Reddick, 157 F.3d at 725 (The "reasons for rejecting a treating doctor's credible opinion on disability are comparable to those required for rejecting a treating doctor's medical opinion."). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citation omitted). "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.' " Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). Additionally, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995) (emphasis in original). Finally, when weighing conflicting medical opinions, an ALJ may reject an opinion that is conclusory, brief, and unsupported by clinical findings. Bayliss, 427 F.3d at 1216; Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

## 2. Analysis

Plaintiff contends that the ALJ failed to provide specific and legitimate reasons for rejecting the opinions of his treating physician, Dr. Paronian, and his treating psychiatrist, Dr. Pogosian. (See Dkt. No. 19 at 16-21). Dr. Paronian opined that Plaintiff could lift and/or carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk up to two hours in

an eight-hour workday, with the use of a cane; and sit less than six hours in an eight-hour workday. (AR 1605). He also noted that Plaintiff needs to change positions every thirty to forty-five minutes, and is capable of limited pushing and/or pulling with the lower extremities; no more than occasional balancing or kneeling; and no bending, climbing, crouching or crawling. (AR 1605-06). Dr. Pogosian opined that Plaintiff had a "marked" impairment in his ability to understand, remember, and carry out detailed instructions; interact appropriately with coworkers, supervisors, and the public; and respond appropriately to work pressures in a usual work setting. (AR 1593-94). She further opined that Plaintiff had a moderately limited ability to understand, remember, and carry out short, simple instructions; make judgements on simple work-related decisions; and respond appropriately to changes in routine work setting. (Id.).

The ALJ provided the following overall assessment of these opinions:

> While I concur with Dr. Paronian and Dr. Pogosian that [Plaintiff's] impairments limit [his] ability to work to some degree, I find these opinions are not deserving of controlling weight because they are without substantial support from the objective medical evidence, especially the evidence of improvement in [Plaintiff's] mental and physic[al] conditions with treatment. In light of this lack of support, it appears that Dr. Paronian and Dr. Pogosian relied quite heavily on the subjective report

33

of symptoms and limitations provided by [Plaintiff] and seemed to accept as true most, if not all, of what [Plaintiff] reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of [Plaintiff's] subjective complaints. Therefore, I find the opinions of Dr. Paronian and Dr. Pogosian are deserving of little probative weight.

(AR 31). In addition, the ALJ gave "some probative weight" to the opinions of state agency non-examining consultants Dr. Zheutlin and Dr. Rudito, who assessed Plaintiff's physical impairments. (AR 30). The ALJ gave "little probative weight" to the opinions of state agency non-examining consultants Dr. Gregg and Dr. Brooks, who assessed Plaintiff's mental impairments. (AR 31).

Plaintiff contends that the ALJ's reasons for discounting the opinions of Dr. Paronian and Dr. Pogosian are "general and conclusory, and contrary to the substantial medical evidence in the record." (Dkt. No. 19 at 19). Plaintiff argues that Dr. Paronian's opinion was based on his physical examination findings and objective diagnostic tests, and Dr. Pogosian's opinion was based on her professional observations and mental status examination findings. (Id.).

Substantial evidence supports the ALJ's decision to give less than controlling weight to the opinions of Dr. Paronian and Dr. Pogosian due to a lack of supporting medical evidence in the record. As discussed above, the ALJ reasonably found that Plaintiff's back

condition and depression have primarily been well-managed with conservative treatment, particularly medication. (See AR 29-30). Plaintiff's main psychological difficulties seem to have occurred when he failed to seek or comply with such treatment, but he showed improvement when he maintained regular treatment. (See, e.g., AR 345, 455-59, 493-95, 1664-74). His back condition has occasionally undergone surgical procedures, but these led to improvement and extended periods of more conservative, medication-based treatment. (See, e.g., AR 599-03, 928-951, 1044-45, 1491, 1516, 1547-48, 1596, 1608, 1610-53). Upon examination, for the most part, Plaintiff has not exhibited significant functional limitations of the spine or joints, sensory or motor deficits at the extremities, or other significant musculoskeletal or neurological abnormalities. (See, e.g., AR 599-03, 928-951, 1567-68, 1610, 1618, 1630, 1643, 1651).

Because the medical evidence overall does not reflect the severe limitations that Dr. Paronian and Dr. Pogosian opined, the ALJ reasonably inferred that these opinions relied heavily on Plaintiff's subjective complaints. This is an appropriate basis for discounting the opinions, in light of the ALJ's credibility finding. See Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible."). Accordingly, the ALJ provided specific and legitimate reasons, based on substantial evidence, for giving less than controlling weight to the treating medical opinions.

## C.    The ALJ Properly Relied On The VE's Testimony At Step 5

Plaintiff contends that the ALJ improperly relied on the VE's testimony because it did not take into account the extent of Plaintiff's limitations as alleged by Plaintiff and opined by Dr. Paronian and Dr. Pogosian. (See Dkt. No. 19 at 21-22). However, for the reasons stated above, the ALJ appropriately rejected Plaintiff's credibility and his treating doctors' opinions. Having done so, the ALJ properly assessed Plaintiff's RFC based on substantial evidence in the record. The ALJ posed a hypothetical question to the VE that reflected the ALJ's RFC assessment, which Plaintiff does not dispute. Accordingly, the ALJ properly relied on the VE's response to conclude that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (AR 33); see Tackett, 180 F.3d at 1101; Bayliss v. Barnhart, 427 F.3d 1211, 1217-18 (9th Cir. 2005).

## VIII.

### CONCLUSION

Consistent with the foregoing, IT IS ORDERED that Judgment be entered AFFIRMING the decision of the Commissioner. The Clerk of

the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: April 23, 2018

                                        /S/
                           SUZANNE H. SEGAL
                           UNITED STATES MAGISTRATE JUDGE

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS OR ANY OTHER LEGAL DATABASE.**